## Case No. 9,577.

### MILLER v. KELLY.

[Abb. Adm. 564.] [1]

District Court, S. D. New York. Nov., 1849.

SALVAGE—CLAIM BY CREW—ACTION IN PERSONAM AGAINST MASTER—CONTRACT FOR THE VOYAGE—MAINTENANCE OF CREW.

1. No claim for salvage can be maintained by the crew of a vessel upon the ground that by their services she is brought through a storm into port, sound in hull.

2. An action for compensation for salvage services rendered to a vessel, cannot be maintained in personam against the master, unless it was performed for his benefit.

3. A mariner who ships "by the run," takes the risk of adverse weather and of other kin-

1 [Reported by Abbott Brothers.]

dred accidents attendant upon maritime enterprise; and if the vessel be driven out of her course by stress of weather, and obliged to take shelter in an intermediate port, and is there detained, the seaman has no claim for additional compensation for extra services thus required.

[Cited in The Clarita and The Clara, 23 Wall. (90 U. S.) 17; Burdett v. Williams, 27 Fed. 119; The C. P. Minch, 61 Fed. 513.]

4. Where a seaman ships "by the run" or "by the voyage," the vessel, although detained at an intermediate port by stress of weather, is bound to maintain him while he remains attached to her, whether his services are useful to her or not.

This was a libel in personam filed by William Miller against James Kelly, to recover compensation for services rendered on board the respondent's vessel. In December, 1848, the libellant shipped at Boston on board the brig W. T. Dugan, of which the respondent was master, for a voyage to New York. He shipped as mariner, and engaged "for the run," at $8, which sum was paid him in advance. The brig, on the voyage, encountered a gale off Martha's Vineyard, in which she was much injured. She put into Nantucket in distress, and there remained for about three weeks, at the end of which time she was towed on to New York by a steamer sent on for the purpose. The libellant commenced this action to recover compensation for the extra services rendered by him to the ship during the storm, and during the detention of the vessel at Nantucket. He claimed to recover either by way of salvage, or on a quantum meruit for such services as being extra his contract.

E. C. Benedict, for libellant.

I. The voyage for which the libellant shipped was the usual direct "run" from Boston to New York, a well-known voyage of safe navigation, from three to six days long—a mere passage from one city to the other. This alone was in the minds of the parties, and on this alone their minds met. If, without the fault of the seamen, this voyage, or run, was deviated from or rendered impossible, whether by accident or design, it was at the risk of the master, who alone controls the voyage. In such case, the men are entitled to a quantum meruit. If the voyage is thus made longer in time or distance, whether the hindrance, departure, or extension occur at either end, or at an intervening port, (not in the run,) the wages are to be increased pro rata. Laws Oleron, art. 19; Cleirac, Oleron, 64, notes 1 and 2; Curt. Merch. Seam. 63.

II. The libellant's demand is as equitable and just as it is legal. Where seamen have encountered great peril in saving their own wrecked vessel, maritime courts are inclined to allow them something in the nature of a salvage quantum meruit, but usually in the name of wages. They are not held to be excluded from their wages by rules which, literally construed, would seem to exclude wages.

F. F. Marbury, for respondent.

BETTS, District Judge. The libellant, in December, 1848, hired himself to the respondent at Boston, as a mariner on board the brig W. T. Dugan, for a voyage to New York, for the sum of $8 for the run. That sum was paid him in advance. This method of hiring was familiar to the ancient marine law. Jac. Sea Laws, 133. It is substantially superseded in modern practice by contracts for monthly wages. Id.; Curt. Merch. Seam. 62, 63. But the obligations in the two cases are equivalent, being an engagement to perform the voyage named.

The vessel, on her regular course, encountered a gale off Martha's Vineyard on the 2d of January, at 3 a. m., which continued until half-past 3 a. m. of the next day, blowing violently from the N. W. The anchors were thrown over without effect; the cable parted, and the main anchor was lost, when both masts were cut away, in order to check the driving of the vessel. She was shortly after brought up by the kedge anchor. In falling, the masts stove a hole in the long boat. The brig came to about five miles east of Cape Pogue. The wind continued N. W., and a light spar was obtained and rigged as a jurymast; the kedge hawser was cut, and the brig put before the wind for Nantucket, where she arrived, grounding while working into the harbor, and was then towed in by a steamer. The weather was severe and freezing during the efforts to make harbor, and ice made over the decks, rigging, &c. She remained in Nantucket about three weeks, and was then towed to New York by a steamer sent to her for that purpose.

The libellant claims compensation for the time he was thus detained, by way of salvage for assisting in saving the vessel, or as a quantum meruit for his services during the delay of her voyage.

The claim for salvage cannot be sustained. The Neptune, 1 Hagg. Adm. 237; The Branston, 2 Hagg. Adm. 3, note; [Hobart v. Drogan] 10 Pet. [35 U. S.] 110, 3 Kent, Comm. 246. No services were rendered by the seaman beyond what were required of him by his duty to the ship. He was bound to the hazards of the voyage, and to bestow his best efforts for the preservation of ship and cargo. Detentions through perils and disasters of the sea, are risks assumed by seamen in every shipping contract, and no legal right arises to them from those causes, or their extra exertions to save their vessel, to demand an increased compensation. Abb. Shipp. 647. The vessel was not a wreck, out of which, by his special exertions, a portion of her tackle or of her cargo has been preserved. She came bodily into port, sound in hull. No claim for salvage can be raised by a crew against a vessel so circumstanced. 3 Kent, Comm. 367. And even if such claim might be enforced in rem against the hulk, as a remnant of the entire ship, the demand could not

be maintained in personam against the master without proof that the salvage service was performed for his benefit. Sup. Ct. Rules, 19.

The claim for continuing wages on a quantum meruit, is pressed upon the consideration, that the libellant engaged for a continued run or voyage to New York, and that by putting the vessel back off her course, the respondent committed a deviation which entitles the libellant to pay for his time intervening up to the arrival of the vessel in her port of destination.

It cannot be maintained that returning to Nantucket from the anchorage of the brig was a voluntary deviation. There was an imperative necessity that something should be done for the preservation of the vessel and her crew; and, in her crippled condition, nothing else could be attempted so safe and serviceable to both, as to reach that harbor. The measure was compelled by stress of weather, and the absolute exigencies of the vessel and her crew. The libellant could not claim a guaranty of fair weather and a swift run. He took the risk of adverse winds and all accidents incident to maritime voyages. Had the ship been driven on shore, or on a rock, or imbedded in ice, and detained thirty or sixty days, the misfortune would have been part of the risk he assumed in undertaking the voyage. He engaged to perform the voyage: and the fair and reasonable interpretation of the contract is, that he is to stay by and aid the ship in accomplishing it, so long as she can be bona fide employed in its performance. In all the books, shipping by the run is considered equivalent to shipping for the voyage. Curt. Merch. Seam. 63, and authorities cited. In each case the seaman is bound to the vessel so long as she continues on the iter; and her being driven from a direct course by distress, or going voluntarily off it for shelter or repair, in no way relieves him from his contract.

Should it happen on a hiring for a voyage to Europe, that the ship was compelled, ex necessitate, to make harbor in Bermuda, the Western Isles, or Madeira, and be detained a period longer than the usual transit to her port of destination, the seamen would not thereby be released from their obligation to continue to the termination of the undertaking.

The obligation between the parties is reciprocal. The ship is bound to support the crew whilst they remain with her, although their services may be of no value to her, and, as in this case, to continue them on board to the port of their discharge, should the vessel be conducted there wholly independent of their assistance.

I do not discuss the question as to the right of the libellant to demand his discharge at Nantucket, when it was found the vessel must remain there to be repaired, or until she could be towed by a steamer to New York. He made no such request. It was probably most to his interest, in a place so separated from intercourse with other ports during the winter season, to remain with the vessel and be maintained at her expense. Whilst he did continue with her and she was engaged in providing means to complete her voyage, and during its completion, he must be regarded as acting under his contract, and can be entitled to claim no more than the stipulated wages. I shall, therefore, pronounce against the demand, but, as there is color of equity in his claim, and it does not appear to be presented vexatiously, I shall not impose costs on him. Libel dismissed without costs.